Branden DOONAN, individually and as personal representative of the Estate of James Doonan, Lyndsey Doonan, Kristine Doonan, Plaintiffs,

v.

CARNIVAL CORPORATION, a Panamanian Corporation, and Gary Colner, ship's physician, Defendants.

No. 05–20128 CV.

United States District Court, S.D. Florida, Miami Division.

Nov. 30, 2005.

Randall Scott Goldberg, David H. Pollack, Miami, FL, for Plaintiffs.

Jeffrey Eric Foreman, Maltzman Foreman PA, Mercy Blasa Pina–Brito, Rachel Sherry Cohen, Jeffrey Bradford Maltzman, Christopher Edson Knight, Edward Joy Briscoe, Fowler White Burnett, Miami, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CARNIVAL'S MOTION TO DISMISS

MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendant Carnival's Motion to Dismiss Plaintiffs' Amended Complaint (**D.E. No. 17**), filed **March 21, 2005**. For the

reasons stated more fully herein, the motion is granted in part and denied in part.

## I. Relevant Factual and Procedural Background

On January 11, 2004, James Doonan ("Doonan") embarked on a cruise aboard Carnival's ship, the Conquest. (D.E. No. 14, Am.Compl.¶ 30). Early one morning while aboard the ship, Doonan collapsed while choking and suffering from visible respiratory distress. (D.E. No. 14, Am. Compl. ¶ 32 & 34). Carnival's medical staff, including Dr. Colner, attempted cardiopulmonary resuscitation for approximately fifty minutes before pronouncing Doonan dead. (D.E. No. 14, Am. Compl.¶ 35). The medical staff did not attempt an emergency tracheotomy at any time during the fifty minute interval which the Plaintiffs allege "is standard procedure in the medical profession when a patient is choking or in acute, life threatening respiratory distress." (D.E. No. 14, Am. Compl.¶ 36). Plaintiffs further allege that had the emergency tracheotomy been performed, Doonan's death would have been prevented. (D.E. No. 14, Am.Compl.¶ 36).

On January 18, 2005, Plaintiffs filed the original, thirteen-count Complaint against Carnival and against the ship's physician seeking damages for Doonan's alleged wrongful death. (D.E. No. 1). A Motion to Dismiss the original Complaint was filed by Carnival on February 8, 2005. (D.E. No. 8). On March 17, 2005, however, the Court denied as moot the Motion to Dismiss (D.E. No. 16) in light of the fact that Plaintiffs had filed an Amended Complaint. (D.E. No. 14).

On March 21, 2005, Carnival filed its Motion to Dismiss the Amended Complaint. (D.E. No. 17). The motion has been fully briefed and is ripe for adjudication. In addition, Plaintiffs filed a Motion for Leave to Amend the Complaint by Interlineation (D.E. No. 44) on August 19, 2005.

## II. Legal Standard

A complaint should not be dismissed for failure to state a claim unless it is clear that no set of facts could be proven that would support a claim for relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir.1982). The court accepts all well-pleaded allegations as true and views the motion in the light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which the claim is based. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that is required is a "short and plain statement of the claim." Fed. R.Civ.P. 8(a)(2) (2004). Thus, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is ... 'exceedingly low.'" *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Devel.*, 711 F.2d 989, 995 (11th Cir. 1983)).

Nonetheless, to survive a motion to dismiss, a plaintiff must do more than merely label his or her claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). In addition, dismissal of a complaint or a portion thereof is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

## III. Analysis

■ Pursuant to 28 U.S.C. § 1333, federal courts have concurrent jurisdiction with state courts over *in personam* admiralty matters. *Diesel "Repower," Inc. v. Islander Investments Ltd.*, 271 F.3d 1318, 1322 (11th Cir.2001). When determining whether there is admiralty jurisdiction over tort claims, the federal judiciary traditionally looks to: 1) the locality of the wrong, which requires that the incident occur on, in, or over navigable waters, *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), and 2) a significant relationship between the incident and traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). With admiralty jurisdiction comes the application of substantive maritime law. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

■ Furthermore, courts have found admiralty law applies in personal injury and contract disputes between passengers injured on cruise ships and the cruise ship companies. *See e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (holding that a forum-selection clause was enforceable in a suit between injured passengers and the cruise line); *Keefe v. Bahama Cruise Line*, 867 F.2d 1318, 1320–21 (11th Cir.1989) ("[a]s a preliminary matter, we note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law, the rules of which are developed by the federal courts"); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir.1984) (noting that "admiralty jurisdiction is also present and maritime law governs the outcome of the suit."), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985). Therefore, this Court finds that on the basis of the facts alleged in the Amended Complaint, it has jurisdiction on the basis of admiralty and that maritime law governs.

■ In its motion, Defendant Carnival argues that Counts III and IV must be dismissed because under *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir.1988), a cruise line cannot be held vicariously liable for the negligence of its ship's medical staff in the treatment and care of passengers. Carnival also moves to dismiss Count V, the breach of contract claim. Upon consideration of the parties' arguments and the applicable case law, this Court has determined that Carnival's Motion to Dismiss shall be granted as to Counts III and V.

### A. Count III—Vicarious Liability (Actual Agency)

■ The majority rule, as set forth in *Barbetta*, establishes that a cruise line cannot be held vicariously liable for the negligence of its ship's doctor in the care and treatment of passengers. *Barbetta*, 848 F.2d at 1369; *see also The Korea Maru*, 254 F. 397 (9th Cir.1918); *The Great Northern*, 251 F. 826 (9th Cir.1918); *Di Bonaventure v. Home Lines, Inc.*, 536 F.Supp. 100 (E.D.Pa.1982); *Churchill v. United Fruit Co.*, 294 F. 400 (D.Mass. 1923); *Mascolo v. Costa Crociere, S.p.A.*, 726 F.Supp. 1285, 1286 (S.D.Fla.1989). The justifications for this rule are the cruise line's lack of control over the doctor-patient relationship and the cruise line's failure to possess expertise in supervising the doctor in his practice of medicine. *Barbetta*, 848 F.2d at 1369–70. Until recently, the "lone beacon of dissent" on this issue has been *Nietes v. American President Lines, Inc.* in which the court held:

[W]here a ship's physician is in the regular employment of a ship, as a salaried member of the crew, subject to the ship's discipline and the master's orders, and presumably also under the general direction and supervision of the company's chief surgeon through modern means of communication, he is, for the purposes of respondeat superior at least, in the nature of an employee or servant for whose negligent treatment of a passenger a shipowner may be held liable.

*Huntley v. Carnival Corp.*, 307 F.Supp.2d 1372, 1374 (S.D.Fla.2004) (citing *Nietes v. American President Lines, Ltd.*, 188 F.Supp. 219, 220 (N.D.Cal.1959)).

On August 27, 2003, however, the Florida Third District Court of Appeal rejected *Barbetta* and instead chose to follow the minority rule set forth in *Nietes. Carlisle v. Carnival Corp.*, 864 So.2d 1 (Fla. 3d DCA 2003). The court in that case found that "regardless of the contractual status ascribed to the doctor, for the purposes of fulfilling the cruise line's duty to exercise reasonable care, the ship's doctor is an agent of the cruise line whose negligence should be imputed to the cruise line." *Carlisle*, 864 So.2d at 7. Following the *Carlisle* decision, one court in the Southern District of Florida also declined to apply *Barbetta. Huntley*, 307 F.Supp.2d at 1372 (denying Carnival's motion to dismiss claim of vicarious liability where ship's doctor was negligent in treating a passenger for injuries sustained during a "slip and fall"). Plaintiffs chiefly rely on the *Carlisle* and *Huntley* decisions in arguing that they are entitled to relief.[1] It should be noted that the *Carlisle* case is currently pending review before the Flori-

da Supreme Court. 904 So.2d 430 (Fla. 2005) (granting review).

This Court has carefully considered the Plaintiffs' argument, but declines to follow either the *Huntley* or *Carlisle* decision, which are non-binding authority. Therefore, the Court does not find Plaintiffs' argument sufficiently persuasive to justify deviation from the majority rule as set forth in *Barbetta*, which has been the controlling authority on this issue for well over a century. Because no construction of the factual allegations will support the cause of action, Plaintiffs' claim as to Count III fails to state a claim for which relief may be granted and should be dismissed with prejudice. *Marshall County Bd. of Educ.*, 992 F.2d at 1174.

**B. Count IV—Vicarious Liability (Apparent Agency)**

■ "Courts in the Eleventh Circuit sitting in admiralty have held that Federal Maritime Law embraces the principles of agency and that the existence of an agency relationship is a question of fact." *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609 (S.D.Fla.1995) (citing *Archer v. Trans/American Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir.1988)). Apparent agency will be established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment. *Id. See also Fairley v. Royal Cruise Line Ltd.*, 1933 A.M.C. 1633, 1639–40 (S.D.Fla.1993).[2] Therefore, under apparent agency, it is the manifestation by

---

1. This issue has never been directly addressed by the Eleventh Circuit. *See Huntley*, 307 F.Supp.2d at 1374 n. 5.

2. Apparent agency can be established despite the majority ruling of *Barbetta. See Fairley*, 1933 A.M.C. at 1639–40. In other words, despite *Barbetta*, a Plaintiff may be able to sustain an apparent agency claim. *See id.*

the cruise ship to the third party that is controlling. *Warren,* 1995 AMC at 2609.

■ Relying principally on *Warren,* Carnival asserts that in recent cases, this jurisdiction has been unwilling to allow recovery based on a theory of apparent agency. (D.E. No. 28, Reply to Resp. to Mot. to Dismiss).[3] In *Warren,* a passenger sought damages against a cruise line for the negligent care and treatment received by the ship's doctor after suffering a heart attack. *Id.* The court refused to accept the apparent agency argument which was based on the cruise line's sales brochure stating that a certified doctor would be aboard the ship. *Id.* The court found that "[because] defendants did not represent [the doctor] in any way other than as the ship's doctor ... [the] brochure did not constitute a true 'holding out' or manifestation that an agency existed." *Id.* Thus, the court found that it was unreasonable for the plaintiffs in that case to believe that the cruise line had control over the manner in which the doctor treated his patients.

In the instant case, however, Plaintiffs assert that in addition to being recognized as the ship's doctor, Dr. Colner "wore a Carnival uniform," "ate with the ship's crew," "[was] held out to the passengers as an officer of the ship" and "was addressed by the ship's crew as an officer of the ship." (D.E. No. 14, Am.Compl.¶ 29). According to the Complaint, Dr. Colner was listed in "literature provided by Defendant," presumably some type of informational pamphlet, as "a crew member and/or employee." (D.E. No. 14, Am.Compl.¶ 29). Therefore, Plaintiffs allege that in addition to ship doctor, Dr. Colner was recognized in other capacities aboard the Conquest.

Based on such allegations, this Court is unwilling to conclude that there are no conceivable facts under which the Plaintiffs would be entitled to relief. Therefore, Carnival's Motion to Dismiss as to Count IV is denied.

### C. Count V—Breach of Contract

■ The general rule of admiralty law is that a ship's passengers are not covered by the warranty of seaworthiness, a term that imposes absolute liability on a sea vessel for the carriage of cargo and seamen's injuries. *See Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1335 (11th Cir.1984) (holding that passenger's claims could not be based on unseaworthiness); *Doe v. Celebrity Cruises,* 145 F.Supp.2d 1337, 1346 (S.D.Fla.2001) (holding that passenger cannot maintain action for breach of implied warranty to provide safe passage). There is an exception to this rule if the ship owner executes a contractual provision that expressly guarantees safe passage. *Hass v. Carnival Cruise Lines, Inc.,* No. 86–33–Civ, 1986 WL 10154 (S.D.Fla. Mar. 20, 1986) (stating that ship owner can be liable for breach of contract of safe passage if it executes such a contractual provision). Furthermore, "[i]f a contractual duty is created, it must arise *explicitly.*" *Id.* Therefore, maritime law will not support a passenger's breach of contract claim unless there is an express provision in the contract of carriage guaranteeing safe passage. *Jackson v. Carnival Cruise Lines, Inc.,* 203 F.Supp.2d 1367, 1377–78 (S.D.Fla.2002). *See also Doe,* 145 F.Supp.2d at 1346; *Hass,* 1986 AMC at 1846.

---

**3.** Defendant also argues Plaintiffs failed to plead "change of position." "Change of position," however, is not a required element in an apparent agency claim. *See Warren,* 1995 AMC at 2609. Rather, this is a required element to prevail on an agency-by-estoppel claim. *Id.* The Plaintiffs in this case are not seeking recovery under the agency-by-estoppel theory. Therefore, this Court does not address this argument.

■ In the Complaint, Plaintiffs do not allege the existence of a express provision guaranteeing safe passage. Rather, Plaintiffs argue that an implied contract was created between Carnival and its passengers when Carnival "agree[d] and undert[ook] to provide medical services to its passengers in return for a fee for those services." (D.E. No. 14, Am.Compl.¶ 74). Accordingly, Count V must be dismissed.

■ Furthermore, it should be noted that the same arguments regarding Count V raised in Defendant Carnival's current Motion to Dismiss (D.E. No. 17) were also raised in Carnival's original Motion to Dismiss (D.E. No. 8), which was filed on February 8, 2005. Subsequently, Plaintiffs filed the Amended Complaint on March 10, 2005 (D.E. No. 14). The Amended Complaint failed to remedy the defect regarding the contractual claim raised in Count V of the Amended Complaint. The Eleventh Circuit has held: "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir.2002). Although Plaintiffs did file a Motion for Leave to Amend the Complaint by Interlineation (D.E. No. 44) on August 19, 2005, the Motion for Leave to Amend is unrelated to the contract claim and fails to remedy the defects that Carnival reemphasized in its Motion to Dismiss the Amended Complaint.

Thus, this Court will dismiss Count V of the Amended Complaint with prejudice. This Court notes, as the Eleventh Circuit Court of Appeals did in *Wagner*, that its decision not to allow Plaintiffs to file another amended complaint with regard to the contract claim is in line with Federal Rule of Civil Procedure 1 which states the purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action." *Wagner*, 314 F.3d at 542. It is therefore:

**ORDERED AND ADJUDGED that**

1. Defendant's Motion to Dismiss **(D.E. No. 17) is GRANTED in part and DENIED in part.** Counts III and V of Plaintiffs' Amended Complaint are **DISMISSED with prejudice.** The motion is **DENIED** in all other respects.

2. Plaintiffs' Motion for Leave to Amend the Complaint by Interlineation **(D.E. No. 44) is GRANTED in part.** On or before ***Wednesday, December 14, 2005*** Plaintiffs shall file a Second Amended Complaint that is consistent with this Order.